# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| RIVER EAST PLAZA, LLC, | ) Case No. 11-05141 |
| | ) Honorable Bruce W. Black |
| Debtor. | ) |
| | ) Hearing: May 5, 2011 at 10:30 a.m. |

**AGREED FINAL ORDER PURSUANT TO
SECTIONS 361, 362, 363 AND 364 OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULE 4001 (I) AUTHORIZING
USE OF CASH COLLATERAL, (II) AUTHORIZING BORROWING
WITH PRIORITY OVER ADMINISTRATIVE EXPENSES AND SECURED BY LIENS
ON PROPERTY OF THE ESTATE AND (III) GRANTING ADEQUATE PROTECTION**

**WHEREAS**, on February 10, 2011 (the "Petition Date"), River East Plaza, LLC, as Debtor and debtor-in-possession (the "Debtor" or the "Borrower") filed a voluntary petition for reorganization as a single asset real estate case pursuant to chapter 11 of Title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Illinois (the "Court"); and

**WHEREAS**, before the Petition Date, on April 14, 2009, Cindy O'Drobinak ("O'Drobinak") was appointed by the Circuit Court of Cook County, Chancery Division (the "State Court") as receiver (the "Receiver") for the Debtor's property at 401-465 East Illinois Street commonly known as River East Plaza (the "Property");

**WHEREAS**, O'Drobinak has been authorized by the Court to continue serving in her capacity as Receiver for the Property through May 18, 2011; and

**WHEREAS**, the Debtor has moved the Court (the "Motion") for authorization, pursuant to Bankruptcy Code §§ 105(a), 363 and § 364(c), to use the cash collateral of LNV Corporation ("Lender"), as such term is defined in Bankruptcy Code § 363(a) ("Cash Collateral"), and if the Lender's Cash Collateral is insufficient to cover the expenses detailed in the Budget (as hereafter

defined), to allow it to ratify, reaffirm and adopt, as modified and supplemented by this Order, its pre-petition secured financing arrangement with the Lender, for purposes of obtaining debtor-in-possession financing ("DIP Financing").

**WHEREAS,** such Cash Collateral and/or DIP Financing shall be provided by Lender pursuant to the terms and conditions of (a) certain pre-petition agreements, including, without limitation, (i) Amended and Restated Loan Agreement, dated as of June 12, 2006, among the Borrower and a predecessor in interest to the Lender, together with Exhibits and Schedules thereto, all as amended from time to time (collectively, the "Loan Agreement"); (ii) Amended and Restated Mortgage and Security Agreement, dated as of June 12, 2006 among the Borrower and a predecessor in interest to the Lender, together with Exhibits and Schedules thereto, as subsequently amended (collectively, the "Mortgage and Security Agreement"); (iii) Amended and Restated Promissory Note, dated as of June 12, 2006 among Debtor and a predecessor in interest to the Lender, together with Exhibits and Schedules thereto, as subsequently amended (collectively, the "Amended and Restated Note"); (iv) Assignment of Rents and Leases, dated as of June 12, 2006, among the Borrower and a predecessor in interest to the Lender, together with Exhibits and Schedules thereto, as subsequently amended (collectively, the "Assignment of Rents"); (v) Assignment of Real Estate Option Agreement, dated as of June 12, 2006, among the Borrower and a predecessor in interest to the Lender, together with Exhibits and Schedules thereto, as subsequently amended (collectively, the "Assignment of Parking Option"); and (vi) various other and further agreements and supplements thereto (collectively, the "Pre-Petition Agreements"), copies of which are annexed as Group Exhibit "A" hereto, pursuant to which, among other things, the Debtor granted to Lender liens, mortgages and security interests in substantially all pre-petition assets of the Debtor (the "Pre-Petition Collateral"), (b) the budget of

proposed expenditures through May 18, 2011, annexed as Exhibit "B" hereto (Exhibit B, together with any amounts required to be paid for United States Trustee's Fees, shall be referred to herein as the "Budget") and (c) this Order (collectively, the Pre-Petition Agreements, the Budget and this Order shall be referred to hereinafter as the "Financing Arrangement"); and

**WHEREAS**, the Debtor seeks authority to use the Lender's Cash Collateral, and if the Lender's Cash Collateral is insufficient to cover the expenses detailed in the Budget, to obtain DIP Financing from the Lender, solely for the purpose of enabling O'Drobinak as Receiver, or any other receiver the Lender approves in its reasonable discretion, to manage the Property pursuant to applicable court orders and not for the purpose of gaining control of or using the Cash Collateral or DIP Financing at the Debtor's own discretion; and

**WHEREAS**, the Debtor has agreed that the Lender will be granted a first priority replacement lien and postpetition superpriority claim secured by all amounts collected by the Receiver postpetition as security for the Debtor's use of any Cash Collateral, provided pursuant to the Financing Arrangement; and

**WHEREAS**, an interim hearing with respect to the Motion was held by the Court on April 20, 2011, and a final hearing with respect to the Motion was held by the Court on May 5, 2011 at 10:30 a.m. (the "Final Hearing");

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

(a)    The Court has jurisdiction over this proceeding and the parties to the Motion under §§ 157(b) and 1334 of title 28 of the United States Code. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364 and 552 of the Bankruptcy Code and

Rule 4001 of the Federal Rules of Bankruptcy Procedure. Venue of the Debtor's case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

(b) An immediate and critical need exists for the Receiver to use the Lender's Cash Collateral and the Receiver may require DIP Financing within the confines of the Budget, in order to continue operation of the Debtor's business in the ordinary course. Without such Cash Collateral and potential for DIP Financing, the Receiver may not be able to pay critical operating expenses. If the Receiver does not have access to Cash Collateral, or DIP Financing, if needed, and is unable to make payments when due, irreparable harm to the Debtor's estate would occur. The ability of the Receiver to use Cash Collateral and access DIP Financing, if needed, to finance its operations is essential to maintaining the Debtor's going concern value and to preserving and protecting the confidence of its vendors, suppliers and tenants.

(c) Lender is willing to consent to the use of its Cash Collateral and provide any DIP Financing to the Receiver for the benefit of the Debtor's estate only upon the conditions contained in this Order.

(d) The Debtor submits that it has attempted but has been unable to obtain sufficient levels of unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense pursuant to § 364(a) or (b) of the Bankruptcy Code necessary to maintain and conduct its business.

(e) The Debtor is unable to obtain secured credit allowable under § 364(c)(1) and (c)(2) of the Bankruptcy Code.

(f) It is in the best interest of the Debtor's estate that it be allowed use Cash Collateral and obtain DIP Financing, if needed, under the terms and conditions set forth herein.

(g) The Debtor admits, without prejudice to third parties to challenge same to the extent set forth below, that as of the Petition Date, in accordance with the Pre-Petition Agreements, (1) the Debtor was indebted to Lender, without defense, counterclaim, recoupment or offset of any kind, in the aggregate amount of approximately $34,077,242.52 (as decided by the Circuit Court of Cook County, Case No. 09 CH 08486), plus the costs and expenses provided for in the State Court foreclosure judgment that had accrued prior to the Petition Date, in respect of loans, advances and other financial accommodations made by Lender to the Debtor in accordance with the Pre-Petition Agreements (the "Pre-Petition Obligations"), (2) the Debtor was in default under the terms of the Pre-Petition Agreements and (3) the Pre-Petition Obligations are secured by valid, enforceable and properly perfected first priority liens on and security interests in the Pre-Petition Collateral, subject only to the rights of the Lienholders (as such term is defined below).

(h) In addition to Lender's secured claim, the Debtor identified in the Motion other secured claims asserted by the parties identified on Exhibit "C" hereto (collectively, the "Lienholders").

(i) The credit and financial accommodations extended under the Financing Arrangement have been negotiated in good faith and at arm's length between the Debtor and Lender. If the Cash Collateral is insufficient to cover the expenses detailed in the Budget and therefore DIP Financing is extended to the Debtor by Lender, it shall be deemed to have been extended or made, as the case may be, in good faith within the meaning of § 364(e) of the Bankruptcy Code. As a result, Lender is entitled to the protection of Bankruptcy Code § 364(e).

(j) Notice of the relief sought by the Motion and the hearings with respect thereto, believed by the Debtor to be the best available notice under the circumstances, has been given pursuant to Bankruptcy Rules 4001(b) and (c) to the Lienholders, the Receiver, the Office of the United States Trustee, the Lender, and the other parties identified on the Debtor's certificate of service filed contemporaneously herewith (collectively the "Noticed Parties") and no further notice of, or hearing on, the relief sought in the Motion is required.

(k) Good and sufficient cause exists for the issuance of this Order, to prevent immediate and irreparable harm to the Debtor's estate.

(l) All objections to the entry of this Order, if any, are resolved hereby or, to the extent not resolved, are overruled.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. For the purposes of obtaining DIP Financing, if the Cash Collateral is insufficient to cover the expenses detailed in the Budget, the Debtor is hereby authorized and will be deemed to ratify and adopt, on an interim basis, retroactive to the Petition Date, the Pre-Petition Agreements, including the validity and enforceability of the Pre-Petition Obligations to Lender incurred thereunder and the liens and security interests granted to Lender in the Pre-Petition Collateral thereunder, subject to the rights of third parties to challenge same to the extent set forth below.

2. The Debtor is hereby authorized to borrow funds from and incur debt to Lender pursuant to the terms and conditions of the Financing Arrangement, and through the Receiver's use of Lender's Cash Collateral, in accordance with the Budget, but subject in all other respects to the provisions of the Loan Agreement, and to grant to Lender the liens and security interests provided for under this Order. The Financing Arrangement is approved in all respects. Lender

and the Debtor may amend, modify, supplement and/or waive any provision of the Financing Arrangement, modify the Budget and/or extend the term of the Financing Arrangement, without further order of the Court provided that (a) such amendments, modifications, supplements and/or waivers do not materially alter the provisions of the Financing Arrangement, and (b) the Debtor files with the Court prior written notice of such amendments, modifications, supplements, waivers and/or extensions, and serves such written notice upon the Noticed Parties, reasonably (but not less than three (3) business days) prior to the proposed effective date thereof.

3. As adequate protection for any post-petition diminution in value of Lender's interests in the Pre-Petition Collateral, including without limitation that caused by the Debtor's (or Receiver's) use of the Pre-Petition Collateral and/or Cash Collateral pursuant to the Budget, Lender is hereby granted a superpriority post-petition claim (the "Adequate Protection Claim") against the assets in the Debtor's estate, provided that such claim will not extend to retainers and advance fees provided to the Debtor's professionals from time to time, or funds or assets which are lent to the Debtor by third parties solely for the payment of professionals (collectively, the "Advances"). For the avoidance of doubt, the Adequate Protection Claim shall include actual cash disbursements by the Receiver of up to 5% more than the cumulative budgeted amount for cash disbursements as itemized in the Budget.

4. **Any and all liabilities of Debtor to Lender arising subsequent to the Petition Date for use of Cash Collateral and/or DIP Financing (the "Post-Petition Obligations"), and the Adequate Protection Claim (collectively with the Post-Petition Obligations, referred to herein as, the "Post-Petition Claim") shall have priority in payment over any other post-petition obligations now in existence or incurred hereafter by the Debtor (or the Receiver), subject to any first priority prepetition claims of Lienholders, and over any and**

all administrative expenses or charges against the Debtor's property in the Debtor's bankruptcy case, including without limitation those specified in Bankruptcy Code §§ 503(b), 506(c), 507(a), 507(b), or 726; provided, however, that the Post-Petition Claim shall not have administrative priority over any administrative claims secured by the Advances, and provided further that the Post Petition Claim shall be afforded such priority as to recoveries upon causes of action brought pursuant to Bankruptcy Code §§ 544-550 and § 553.

5.   Pursuant to Bankruptcy Code §§ 362, 363(e) and 364(c), as security for the Post-Petition Claim, the Debtor is hereby authorized to and does grant to Lender a valid, binding, enforceable and automatically perfected first priority replacement lien and/or security interest in assets of the same categories which the Lender possessed valid and perfected first priority pre-petition security interests, provided, however, that such lien will not extend to the Advances, and such lien is subject only to liens existing as of the Petition Date that are valid, enforceable and not subject to avoidance by a trustee under the Bankruptcy Code, in all of the Debtor's presently owned or hereafter acquired property and assets, except the Advances, whether such property and assets were acquired by the Debtor before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and the proceeds and products thereof (collectively, the "Collateral") (to the extent acquired after the Petition Date, the "Post-Petition Collateral"), including without limitation any equity of the Debtor in the Pre-Petition Collateral, proceeds and products of any of the foregoing, and claims, causes of action and recoveries pursuant to Bankruptcy Code §§ 544-550 and § 553.

6. The liens, mortgages and security interests granted to Lender hereunder to secure the Post-Petition Claim shall not be subject to any lien, mortgage or security interest or any other interest which is avoided and which would otherwise be preserved for the benefit of the Debtor's estate under Bankruptcy Code § 551, and the liens, mortgages and security interests granted to Lender hereunder shall encumber and constitute a prior lien, mortgage and security interest in and to any lien, mortgage, security interest or interest which is avoided and which would otherwise be so preserved for the benefit of the Debtor's estate. Lender shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any Collateral securing any of the Post-Petition Claim.

7. **Effective, retroactive to the Petition Date, the Debtor waives irrevocably all rights, if any, it might otherwise assert against the Collateral pursuant to Bankruptcy Code §§ 506(c) or 552(b).**

8. **Effective, retroactive to the Petition Date, no entity in the course of this bankruptcy case (whether chapter 11 or subsequent chapter 7), shall be permitted to recover from the Collateral (whether directly or through grant of derivative and/or equitable standing in the name of the Debtor and/or the Debtor's estate) any cost or expense of preservation or disposition of the Collateral, including, without limitation, expenses and charges as provided in Bankruptcy Code §§ 506(c) or 552(b) without the prior written consent of Lender. Effective retroactive to the Petition Date, no entity shall be permitted to recover from Collateral, or assert against Lender, any claim with respect to any unpaid administrative expense of the Debtor's bankruptcy case, whether or not the Debtor's payment of such administrative claim was contemplated by or included in the Budget.**

9.  The Debtor and Receiver shall not use Cash Collateral or DIP Financing other than in accordance with the terms of this Order and the Budget or further order of the Court after notice and hearing. So long as there are any Pre-Petition Obligations or Post-Petition Obligations (collectively, the "Obligations") outstanding to Lender, any further orders that authorize the obtaining of credit or the incurring of indebtedness pursuant to Bankruptcy Code § 364(c) or § 364(d), shall not be secured by a lien, mortgage or security interest in the Collateral that is entitled to a priority that is equal or superior to that granted to Lender herein.

10.  **The Debtor and Receiver shall not use Cash Collateral other than in accordance with the terms of this Order.** The automatic stay provisions of Bankruptcy Code § 362 are hereby modified to permit (a) the Debtor to implement and perform the terms of the Financing Arrangement, and (b) the Debtor to create, and Lender to perfect, any and all post-petition liens, mortgages and security interests granted hereunder. Lender shall not be required to file UCC statements or other instruments with any other filing authority to perfect any post-petition lien, mortgage or security interest granted by this Order or take any other action to perfect such post-petition liens, mortgages and security interests, which shall be deemed automatically perfected by the docket entry of this Order by the Clerk of the Court. If, however, Lender shall, in its sole and absolute discretion, elect for any reason to file, record or serve any such financing statements or other documents with respect to such post-petition liens and security interests, the Debtor shall execute same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time and on the date of the commencement of the Debtor's chapter 11 case on the Petition Date.

11.  Each of the following shall constitute an "Event of Default" under this Order:

(a) the Debtor's chapter 11 case is either dismissed or converted to a chapter 7 case;

(b) a trustee or an examiner with expanded powers is appointed in the Debtor's chapter 11 case;

(c) the Debtor approves with the Lender's consent expenditures by the Receiver of Cash Collateral for any purpose other than those set forth on the Budget, provided that for the cumulative Budget periods which have occurred, the Receiver's actual cash disbursements may be up to 5% more than the cumulative budgeted amount for cash disbursements as itemized in the Budget, without such expenditures constituting an Event of Default;

(d) the cumulative amounts for cash disbursements agreed to by the Debtor are 5% or more than the amounts set forth in the Budget;

(e) this Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall, in the reasonable opinion of Lender, materially and adversely affect the rights of Lender hereunder or shall materially and/or adversely affect the priority of any or all of Lender's claims, liens or security interests;

(f) the occurrence subsequent to the Petition Date of an Event of Default under the Pre-Petition Agreements, other than any Event of Default occurring and/or existing solely because of (1) the commencement of the Bankruptcy Case on the Petition Date, (2) the breach of any financial covenant set forth in the Pre-Petition Agreements or the Debtor's compliance with this Order, or (3) by virtue of operation of the Bankruptcy Code or the Debtor's availing itself of its rights as a debtor-in-possession.

(g) the occurrence of a material adverse change, in each case as determined by the Lender in its reasonable business judgment, in (1) the condition (financial or otherwise), operations, assets, business or business prospects of the Debtor, (2) the Debtor's ability to pay the Obligations in accordance with the terms of the Financing Arrangement, or (3) the value of the Collateral;

(h) non-compliance or default by the Debtor with any of the terms and provisions of this Order; however, that said non-compliance or default shall not be deemed an Event of Default if curable and cured by the Debtor within five (5) business days after notice of such non-compliance or default is given to the Debtor by Lender;

(i) O'Drobinak is involuntarily replaced as Receiver prior to the confirmation of a plan by someone not acceptable to the Lender in its reasonable discretion;

(j) Dan McLean does not sit for deposition in accordance with the Court's March 14, 2011 Order [Docket No. 66] on or before May 11, 2011 or as such date may be extended at Lender's request;

(k) Geneva Leasing Associates, Inc. and Geneva Investment Management Services, Inc. (collectively, "Geneva") fail to produce to Lender for deposition A. Wayne Massey at a mutually convenient time no later than May 11, 2011 or as such date may be extended at Lender's request;

(l) by May 2, 2011, the Debtor fails to file a plan of reorganization or files a plan that includes any of the following characteristics: (a) lack of, or inadequate, secured financing necessary to implement the terms of the plan; (b) any proposed distribution to equity holders in violation of the absolute priority rule; or (c) any treatment between classes of general unsecured claims that unfairly discriminates; provided, however, that Lender notify the Debtor

by electronic message not later than May 5, 2011 to identify with reasonable specificity those provisions of the plan that Lender believes constitute an event of default under this Order, so that the Debtor may make appropriate modifications to the plan by May 12, 2011;

(m)     by May 2, 2011, the Debtor fails to request a joint disclosure statement and confirmation hearing (the "Disclosure Statement and Confirmation Hearing"), if necessary, to take place no later than June 15, 2011, subject to the Court's calendar, or, if the Debtor makes such request, Geneva opposes it;

(n)     the Debtor and Geneva fail to voluntarily produce to Lender at a mutually convenient time on or before May 2, 2011, (i) any existing appraisals they seek to introduce into evidence at the Preliminary Hearing or at the Disclosure Statement and Confirmation Hearing; and (ii) for deposition within 7 days thereafter, but in no case after the applicable hearing, or on such extended date at Lender's request, any known appraiser who has prepared an existing appraisal that they seek to offer for testimony at the Preliminary Hearing or at the Disclosure Statement and Confirmation Hearing; or

(o)     the Final Hearing shall not have taken place on or before May 5, 2011, subject to the Court's schedule.

12.     Upon the occurrence of an Event of Default and the giving of written notice thereof by facsimile or e-mail (the "Default Notice") by Lender to the Debtor's counsel (the "Noticed Parties"), or upon the occurrence of the Expiration Date (as such term is defined below):

(a)     Lender shall have no further obligation to make loans, advances, and/or other financial accommodations to the Debtor or to allow the Debtor to use the Cash Collateral without further order of the Court;

(b) payment of the Post-Petition Claim shall be due and payable, and Lender shall have the right, free of the restrictions of Bankruptcy Code § 362 or under any other section of the Bankruptcy Code or applicable law or rule, to exercise its rights and remedies pursuant to the Financing Arrangement and/or applicable law as to all or such part of the Collateral — including by seeking a sale of the Collateral at foreclosure — as Lender, in its sole and absolute discretion, shall elect: (1) with respect to the Events of Default specified in subparagraphs "(a)" through "(b)" of the preceding paragraph of this Order, immediately upon the giving of the Default Notice; or (2) with respect to Events of Default <u>other than</u> those specified in subparagraphs "(a)" through "(b)" of the preceding paragraph immediately upon expiration of 3 business days after the Default Notice has been served unless an order restraining the Lender's rights to exercise such remedies has timely been obtained from the Court; or (3) upon the occurrence of the Expiration Date immediately.

13. Any pre-petition clearing, dominion, lockbox and similar accounts maintained by or on behalf of the Debtor pursuant to the Pre-Petition Agreements at certain banking institutions for the collection of the proceeds of Lender's Collateral (including without limitation receivables and other proceeds, but excluding any types of assets in which the Lender does not possess valid, perfected, first priority security interest), and the payment procedures under which such accounts are administered by or on behalf of the Debtor (collectively, the "<u>Collection Accounts and Procedures</u>"), shall continue in full force and effect unless otherwise directed by Lender. Without limitation of the foregoing, from and after the date of this Order, except as provided in the Budget, the Debtor, through the Receiver or otherwise, may remit to Lender such cash, cash equivalents and checks, if any, as are proceeds of Lender's Collateral obtained in the ordinary

course of the Debtor's business, and/or shall cause any tenants, customers and account debtors of the Debtor to remit such cash, cash equivalents and checks, if any, as are proceeds of Lender's Collateral, in accordance with the Collection Accounts and Procedures and in accordance with the terms and conditions of the Pre-Petition Agreements.

14. To the extent, if any, that as of the date of this Order, the Debtor maintains custody and/or control of any cash, cash equivalents or checks, whether in its possession, in bank accounts, in lockbox accounts or otherwise, and to any extent such cash, cash equivalents or checks are proceeds of Lender's Collateral within the meaning of § 552(b)(1) of the Bankruptcy Code, upon entry of this Order the Debtor shall deliver such cash, cash equivalents or checks, and the proceeds thereof, to Receiver.

15. The Debtor and any successor to the Debtor, including without limitation any successor trustee or trustees, and the Receiver shall, subject to the rights of the Lienholders (a) assign or direct to Lender any and all payments, proceeds or other consideration ("Proceeds") of a "Disposition" (as defined below) and (b) immediately deliver any and all Proceeds of a Disposition which come into their possession to Lender in the form received. As used herein, a "Disposition" shall mean a sale, liquidation, collection or disposition of the Collateral under Section 363 of the Bankruptcy Code or otherwise, other than a sale, liquidation, collection or disposition of the Collateral (i) in the ordinary course of business or (ii) through a confirmed plan of reorganization. In furtherance of Lender's receipt of the Proceeds of a Disposition, the Debtor and the Receiver shall not seek to cause the escrow of, enjoin Lender's receipt of, or otherwise withhold from Lender any Proceeds of any Disposition, and any order of the Court authorizing a Disposition shall provide for Lender's receipt of Proceeds in accordance with the provisions of this paragraph, subject to the rights of the Lienholders.

16.     Lender is authorized to accrue interest and charge the Debtor's account therefor, *[handwritten: at the applicable non-default rate]* and to apply remittances from the Debtor against interest, all as set forth pursuant to the Financing Arrangement, (a) on the outstanding balance of the Post-Petition Obligations, and (b) on the outstanding balance of the Pre-Petition Obligations, determined as of the Petition Date, to the extent permitted by section 506 of the Bankruptcy Code.

17.     **Lender is authorized, notwithstanding the provisions of Bankruptcy Code § 362, (a) to retain and apply the Proceeds of the Collateral to the repayment of the Post-Petition Claim, and (b) to retain and apply the Proceeds of the Pre-Petition Collateral to the repayment of the Pre-Petition Obligations. Such applications of the Proceeds shall be free and clear of any claim, charge, assessment or other liability including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, Bankruptcy Code §§ 506(c) or 552(b).**

18.     **Without prejudice to the rights of third parties to the extent set forth in the following paragraph of this Order, the validity, extent, priority, perfection and enforceability of Lender's pre-petition claims, liens, mortgages and security interests in the Debtor's assets shall not be subject to challenge by the Debtor, and in furtherance thereof the Debtor hereby releases, waives and affirmatively agrees not to allege or otherwise pursue any or all defenses, affirmative defenses, counterclaims, claims, causes of action, recoupments, setoffs or other rights that it may have to contest (a) any Defaults or Events of Default (as defined in the Pre-Petition Agreements) which were or could have been declared by Lender as of the Petition Date, (b) any provisions of the Pre-Petition Agreements, (c) the amount of the Debtor's indebtedness to Lender as of the Petition Date as set forth in this Order, or (d) the conduct of Lender in administering the pre-petition**

business relationship between the Debtor and Lender, including without limitation "lender liability" and/or "deepening insolvency" claims and causes of action.

19. Notwithstanding the Debtor's release and waiver set forth in the preceding paragraph of this Order, interested parties other than the Debtor shall have through and until the earliest of (a) 60th day following the date of the Interim Order, (b) the entry of an order modifying the automatic stay to permit the Lender to pursue a state court foreclosure action or (c) the entry of an order dismissing the Debtor's chapter 11 case, to file a motion with the Court seeking authorization to commence an adversary proceeding as an estate representative against Lender for the purpose of challenging the validity, extent, priority, perfection and enforceability of Lender's pre-petition liens, mortgages and security interests in the Debtor's assets. Failure to file such a motion within the applicable time period shall result in a bar forever from doing so.

20. Lender shall be entitled to the benefits and protections of this Order, including the protections afforded pursuant to Bankruptcy Code § 364(e), with respect to all loans, advances and/or financial accommodations made by Lender to or for the benefit of the Debtor pursuant to this Order. Pursuant to the provisions of Bankruptcy Code § 364(e), the liens, mortgages and security interests granted under or ratified by this Order shall be binding on the Debtor and/or any successor trustee or trustees even if this Order is reversed or modified on appeal.

21. The terms and conditions of this Order shall be: (a) immediately enforceable pursuant to Bankruptcy Rule 8005; and (b) not be stayed absent (1) an application by a party in interest for such stay in conformance with such Bankruptcy Rule 8005, and (2) a hearing upon notice to the Debtor, the Lender, and the other Noticed Parties.

22. The provisions of this Order and any actions taken pursuant hereto shall survive entry of any orders converting this case from chapter 11 to chapter 7 of the Bankruptcy Code. The terms and provisions of this Order, as well as the claims, liens, mortgages and security interests granted by this Order, shall continue in this or any superseding case under the Bankruptcy Code and shall continue notwithstanding any dismissal of the Debtor's bankruptcy case (and any such order of dismissal shall so provide), and such claims, liens, mortgages and security interests shall maintain their priority as provided by this Order until the Debtor's Post-Petition Obligations to Lender are satisfied in full provided that nothing contained herein shall modify or limit Debtor's right to propose or confirm a plan with respect to the Pre-Petition Obligations in conformity with section 1129 of the Bankruptcy Code. Notwithstanding the foregoing, for the avoidance of doubt, nothing contained herein prevents the Debtor from filing a plan of reorganization in these bankruptcy cases, provided that the postpetition claims granted herein are satisfied in full in cash on the effective date of any confirmed plan in this case.

23. Notwithstanding anything else contained in this Order, Lender is under no obligation to extend any additional DIP Financing to the Debtor or Receiver, other than to the extent contemplated by the Budget and this Order, it being understood that any DIP Financing made by Lender is only permitted if the Lender agrees to the extension of such DIP Financing in the Lender's sole discretion.

24. The Financing Arrangement shall be in effect for the period commencing with the Petition Date through and including May 18, 2011 (the "Expiration Date") unless otherwise extended from time to time pursuant to a mutually acceptable Budget for such extension periods, as may be agreed to by Lender and Debtor, without further order of the Court; provided,

however, that nothing contained in this Order shall limit the Debtor's right to seek the non-consensual use of Cash Collateral after May 18, 2011.

25. For the avoidance of doubt, notwithstanding anything to the contrary herein, the Receiver shall continue to have the authority, but not the obligation, consistent with the Court's March 17, 2011 Second Agreed Interim Order Pursuant to 11 U.S.C. § 543(d)(1) Authorizing Cindy O'Drobinak to Continue as Receiver/Custodian [Docket No. 74], to pay (in addition to the amounts set forth in the Budget) any and all amounts then-owed for insurance premiums, utility bills, janitorial services, security services, receiver fees, fire safety systems, elevator maintenance, property management and legal fees, pest control, waste removal, electrical supplies, office expenses, broker's fees, and wages, all not to exceed $158,000 in the aggregate and all regardless of whether such amounts accrued pre- or post-petition. To the extent of any of the aforementioned expenses that accrued postpetition have already been paid, such expenses will not count against the $158,000 cap.

26. Nothing contained in this Order shall be construed to impair or otherwise affect in any way the Lender's rights to enforce the terms of any guaranties previously provided it by Dan McLean.

27. Within three (3) business days of entry of this Order, the Debtor shall serve a copy of the Motion and this Order, together with the Exhibits hereto, by telecopy, e-mail (if agreed to by the recipient), overnight courier, by hand delivery or by first-class mail on (a) the United States Trustee, (b) the attorneys for the Lender, (c) counsel to the Receiver, (d) all creditors known to the Debtor who may assert liens against any of the Debtor's assets, (e) the Internal Revenue Service, (f) the United States Attorney; (g) the parties appearing Debtor's List

of 20 Largest Unsecured Creditors; and (h) those parties that have requested special notice pursuant to Fed. R. Bankr. P. 2002.

28. To the extent that any of the provisions of this Order shall conflict with any of the provisions of the Pre-Petition Agreements, this Order is deemed to control and shall supersede the conflicting provision(s) in said agreement(s).

Dated: Chicago, Illinois
April ___, 2011

ACKNOWLEDGED AND AGREED TO

_____
COUNSEL TO CINDY O'DROBINAK,
AS RECEIVER

_____
Hon. Bruce W. Black

5/5/2011